MUTUAL LIFE INSURANCE COMPANY, Respondent, *v.* HANNAH SANDFELDER ET AL. ; WILLIAM MAAS ET AL., INTERPLEADERS, Appellants.

### June 22, 1880.

1. That a donor is indebted, or even embarrassed, does not make his voluntary conveyance fraudulent *per se* as to subsequent creditors.

2. In order to set aside a voluntary conveyance in favor of subsequent creditors, actual fraud must be proved.

3. An intention to defraud, by the payment of premiums for the insurance of the debtor's life for the benefit of his wife and children, was not proved by the facts in this case.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

DAVID GOLDSMITH, for the appellants : Sandfelder's insolvency, shown by proof of the failure of his own firm and otherwise, is presumed to continue, in the absence of satisfactory evidence to the contrary. — *Body* v. *Jewsen,* 33 Wis. 402 ; 2 Whart. on Ev., sect. 1289 ; *Metcalf* v. *Munson,* 10 Allen, 491. Solvency means sufficiency of assets subject to execution (and, therefore, of assets in excess of all exemptions) for the payment of debts. — *Potter* v. *McDowell,* 31 Mo. 73 ; *Eddy* v. *Baldwin,* 32 Mo. 369. The children's interest in the insurance in question is not within the purview of sects. 15–18 of chap.

94 of Wagner's Statutes. — *Baker* v. *Young*, 47 Mo. 455. As to the right of creditors to subject insurance to the payment of their claims. — *Freeman* v. *Pope*, L. R. 5 Ch. 530 ; *Stokes* v. *Coffey*, 8 Bush, 533 ; *Appeal of Elliott's Executors*, 50 Pa. St. 83 ; *Briggs* v. *McCullough*, 36 Cal. 542 ; *Catchings* v. *Manlove*, 39 Miss. 655. A voluntary conveyance or gift made by an insolvent is voidable by subsequent as well as prior creditors. — *Boyle* v. *Boyle*, 6 Mo. App. 594 ; *Vertner* v. *Humphreys*, 14 Smed. & M. 130 ; Bump's Fr. Conv. 327 ; 1 Am. Ld. Cas. 43, 44 ; *Howe* v. *Waysman*, 12 Mo. 169 ; *Henderson* v. *Dickey*, 50 Mo. 303.

A. BINSWANGER, for the respondent : A voluntary conveyance by a person in debt is not, as to subsequent creditors, fraudulent *per se*. To make it fraudulent as to subsequent creditors, there must be proof of actual or intentional fraud. — *Payne* v. *Stanton*, 59 Mo. 158 ; *Pepper* v. *Carter et al.*, 11 Mo. 540. Creditors are not entitled to the premiums paid by the deceased during his lifetime, while insolvent. — *Connecticut, etc., Ins. Co.* v. *Burroughs*, 34 Conn. 305 ; *Burroughs* v. *State, etc., Ins. Co.*, 97 Mass. 359 ; *Landrum* v. *Knowles*, 22 N. J. Eq. 594 ; *Unity* v. *Dugant*, 118 Mass. 219 ; *West* v. *Reid*, 2 Hare, 249 ; *Burridge* v. *Row*, 1 You. & Coll. 183. A husband is permitted to withdraw from his funds, though insolvent, a sum not exceeding $300 per annum for premiums on a policy of insurance. — *In re Yeager*, 8 West. Ins. Rev. 378 ; *Smith* v. *Missouri Valley Ins. Co.*, 3 Cent. L. J. 386 ; *Baker* v. *Young*, 47 Mo. 455 ; *Charter Oak Ins. Co.* v. *Brant*, 47 Mo. 419 ; *Adams* v. *Sandfelder* (U. S. Cir. Ct. East. Dist. Mo.), not reported ; *Pullis* v. *Robinson*, 5 Mo. App. 548.

BAKEWELL, J., delivered the opinion of the court.

Samuel Sandfelder, Jr., insured his life in plaintiff's company, the policy being made payable to his wife and his children in equal proportions. The annual premiums were

$74. This amount was reduced by dividends and commission allowed on the first premium, so that the annual payments were about $55. The policy was dated June 16, 1874, and was for $3,000. The premiums were paid by Sandfelder himself: the second on June 22, 1875, and the last on July 19, 1876. Sandfelder died on April 25, 1877, and the amount of insurance was paid into court by plaintiff; certain creditors of Sandfelder and his children being required to interplead for the proceeds in the present proceeding. No question is made as to the share coming to the widow. The appellants, the creditors of Sandfelder, claim only so much of the proceeds as by the terms of the policy are payable to the children. On hearing, the court dismissed the claim of the intervening creditors, and ordered that the fund be paid over to the widow and children. From this decree the intervening creditors appeal.

The court found that the creditors who had intervened in this action sold the goods upon which their claims are based, after the payment of the last premium, and that they are consequently in the position of subsequent creditors. We think that this finding of fact is supported by the evidence. The claims of the intervening creditors are all for merchandise sold on open account, and embrace many items of debit and credit in each case; but an examination of them shows that as to five out of seven of the claims nothing was due the claimants when the last premium was paid by Sandfelder, in July, 1876; or if in any of these cases anything was then due, it was paid in full before the end of that year. So that, as to these claims, they are clearly for goods sold during the autumn of 1876 and the spring of 1877, after the last premium was paid.

The account of Palmer & Capron runs from September, 1874, to April, 1877. The addition shows a small balance due after the payment of $128 on May 26, 1876; but there is evidently an error, and it is plain from the entries that

that payment was regarded as in full to date, and a new account commenced with the first entry of merchandise on August 8, 1876. The account of Grant & Co. shows a balance due in June, if the debit and credit items are summed up to that date ; but the cash payment on December 9, 1876, paid all the items of the account up to and including August 9, 1876. So that, in that case also, there is no charge for goods sold before the last premium paid by Sandfelder, and the account as it stands is for goods sold after that date.

The intervenors are, therefore, all subsequent creditors of Sandfelder. At the time of his death he owed none of them anything, on any account, for any transaction occurring at or prior to the time of the payment by him of these premiums.

The mere fact that a person is indebted, or even embarrassed, does not make his voluntary conveyance fraudulent *per se* as to subsequent creditors. The question whether such a settlement is fraudulent must be determined, where there is question of their rights, by all the circumstances ; and actual fraud must be proved, to set aside, as to subsequent creditors, a prior voluntary conveyance. *Boyle* v. *Boyle*, 6 Mo. App. 594 ; *Payne* v. *Stanton*, 59 Mo. 159.

The testimony as to the financial condition of Sandfelder whilst these premiums were paid is that of Rosenblatt, who was the witness of the intervening claimants who appeal. If we are to take what this witness says, Sandfelder was solvent and in prosperous circumstances during this period. It is contended that, if this testimony be analyzed and taken together with the fact that Sandfelder failed in Kansas in 1874, and compromised then with his creditors at forty per cent, and that when he died, in April, 1877, his estate proved insolvent, and paid at last less than twenty-five per cent, a very strong case is made out that he was embarrassed during the whole intervening period. We do not propose to go into this testimony in detail in

this opinion.   The whole evidence has been read and considered, and we are clearly of opinion that it wholly fails to show a state of facts from which it can fairly be inferred that Sandfelder, in withdrawing from his assets $55 a year to make this provision for his wife and children, did so with the intention of defrauding his creditors, or that such was the natural or necessary consequence of his act. He seems to have believed himself to have been in prosperous circumstances at this time, and his balance-sheet, shown to Rosenblatt, his brother-in-law, whom he had no interest to deceive, showed that his assets exceeded his liabilities in 1876.   Rosenblatt, who was in his confidence, swears that he thinks, from his balance-sheet and his books, as shown to him, that Sandfelder was then prosperous ; that he was accumulating capital, and his assets exceeded his liabilities by $3,000.   He met his liabilities promptly during this period, and owed nothing, apparently, except to relatives.   His subsequent failure, and other circumstances, and certain portions of the testimony of Rosenblatt, may be taken as strongly tending to show, however, that Sandfelder was embarrassed, and not in a condition to make a gift good as to existing creditors, in 1875 and 1876 ; but we see nothing in the whole testimony from which it can be fairly inferred that in withdrawing the sum required for these premiums, he was guilty of actual, intentional fraud ; and if this was not shown, no error was committed by the trial court in refusing to disturb the settlement.   To entitle the intervening claimants to the remedy they ask, they must, according to the doctrine in this State as laid down in the case cited above, prove the existence of a fraudulent intention when the premiums were paid ; and we agree with the trial court in thinking that the evidence is insufficient to warrant this inference.

The conclusion at which we have arrived as to this point makes it unnecessary to examine the meaning of sects. 16–18 of chap. 94, Wagner's Statutes, or the ques-

tion of their application, had the creditors made out a different state of facts. It is claimed by the respondents that the interests of the children are, in any event, protected by the provisions of these sections; and their contention seems to be that, under the language of the statute, no settlement by way of insurance for the benefit of a wife and children can be set aside in Missouri. Had the testimony been otherwise, a question would also have arisen as to whether the creditors would be entitled to the shares of the children in the policy, or only to the amount of the premiums paid. But, as we think that there is no sufficient evidence of fraud, the judgment ought to be affirmed, whatever construction be given to the sections of the Married Women's Act named above; and nothing need be said as to the amount which ought to have been recovered, had the finding and decree been otherwise.

The judgment is affirmed. Judge HAYDEN concurs; Judge LEWIS is absent.